UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| LIDIJA UJKIC p/k/a LIDIA CURANAJ, | : |
| | : |
| Plaintiff, | : Case No. 1:16-CV-9608 (AJN) |
| | : |
| – against – | : (ECF Case) |
| | : |
| TWENTY-FIRST CENTURY FOX, INC., FOX | : |
| ENTERTAINMENT GROUP LLC, FOX | : |
| TELEVISION STATIONS, LLC, and BYRON | : |
| HARMON, in his individual and professional | : |
| capacities, | : |
| | : |
| Defendants. | : |
| | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF
## (1) MOTION BY DEFENDANTS TWENTY-FIRST CENTURY FOX, INC. AND
## FOX ENTERTAINMENT GROUP LLC TO DISMISS THE COMPLAINT AND
## (2) MOTION BY ALL DEFENDANTS TO STRIKE CERTAIN ALLEGATIONS

DECHERT LLP
Andrew J. Levander
Linda C. Goldstein
Nicolle L. Jacoby
Jamie R. Hacker
Diana C. Wang
1095 Avenue of the Americas
New York, New York 10036
Tel. (212) 698-3500
linda.goldstein@dechert.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 2

     A.    Plaintiff's Allegations About Her Employment at Fox5 ........................................ 3

     B.    Defendants' Human Resources and Corporate Structures ...................................... 4

ARGUMENT ........................................................................................................................ 6

I.    The Claims Against Twenty-First Century and Fox Entertainment Should Be
Dismissed Because They Are Not Plaintiff's Employers ..................................... 6

     A.    The Fox Television Stations Make Their Own Employment Decisions and
Control Their Own Labor Relations ...................................................................... 8

     B.    FTS's Operations Are Separate and Distinct from the Operations of the
Parent Companies ................................................................................................ 10

     C.    FTS's Management Is Separate and Distinct From Management of the
Parent Companies ................................................................................................ 11

II.    The Allegations About Ailes and Plaintiff's Interactions with Him
Should Be Stricken .............................................................................................. 12

     A.    The Ailes Allegations Are Irrelevant and Prejudicial ......................................... 13

     B.    The Ailes Allegations Are Time-Barred .............................................................. 15

CONCLUSION ................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ayala v. Metro One Sec. Sys., Inc.*,
  No. 11-CV-233, 2011 WL 1486559 (E.D.N.Y. Apr. 19, 2011) ..............................................7

*Balut v. Loral Elecs. Sys.*,
  988 F. Supp. 339 (S.D.N.Y.1997), *aff'd*, 166 F.3d 1199 (2d Cir. 1998) ..........................10, 11

*Cetina v. Longworth*,
  583 F. App'x 1 (2d Cir. 2014), *cert. denied*, _U.S._, 135 S. Ct. 1531 (2015)........................16

*Cook v. Arrowsmith Shelburne, Inc.*,
  69 F.3d 1235 (2d Cir. 1995)........................................................................................7, 8, 11

*E.E.O.C. v. Port Auth. of N.Y. & N.J.*,
  768 F.3d 247 (2d Cir. 2014)..............................................................................................7

*Finnane v. Pentel of Am., Ltd.*,
  43 F. Supp. 2d 891 (N.D. Ill. 1999) ................................................................................15

*G-I Holdings, Inc. v. Baron & Budd*,
  238 F. Supp. 2d 521 (S.D.N.Y. 2002)..............................................................................14

*Harris v. City of N.Y.*,
  186 F.3d 243 (2d Cir. 1999)............................................................................................16

*Herman v. Blockbuster Entertainment Group*,
  18 F. Supp. 304 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 899 (2d Cir. 1999) ..........................8, 9, 10

*Mas Marques v. Digital Equip. Corp*,
  637 F.2d 24 (1st Cir. 1980) ..............................................................................................9

*Morse v. Weingarten*,
  777 F. Supp. 312 (S.D.N.Y. 1991) ..................................................................................14

*Oram v. SoulCycle LLC*,
  979 F. Supp. 2d 498 (S.D.N.Y. 2013)..............................................................................15

*Parker v. Columbia Pictures Indus.*,
  204 F.3d 326 (2d Cir. 2000)............................................................................................11

*Richard v. Bell Atl. Corp.*,
  946 F. Supp. 54 (D.D.C. 1996) ........................................................................................7

*Roe v. City of New York*,
  151 F. Supp. 2d 495 (S.D.N.Y. 2001)......................................................................13

*Singh v. Wells*,
  445 F. App'x 373 (2d Cir. 2011) ............................................................................16

*Sira v. Morton*,
  380 F.3d 57 (2d Cir. 2004).........................................................................................2

*Suares v. Cityscape Tours, Inc.*,
  No. 11 Civ. 5650, 2014 WL 969661 (S.D.N.Y. Mar. 12, 2014), *aff'd*,
  603 F. App'x 16 (2d Cir. 2015) ............................................................................8, 9

*Tucker v. Am. Int'l Grp., Inc.*,
  936 F. Supp. 2d 1 (D. Conn. 2013)........................................................................14

*Urashka v. Griffin Hosp.*,
  841 F. Supp. 468 (D. Conn. 1994)........................................................................14

**Statutes/Rules**

42 U.S.C. § 1981.......................................................................................................4, 7

Fed. R. Civ. P. 12(b)(6)...........................................................................................1, 17

Fed. R. Civ. P. 12(d)....................................................................................................2

Fed. R. Civ. P. 12(f)................................................................................................2, 17

**Other Authorities**

Emily Steel, *Fox Faces New Lawsuit Claiming Harassment by Roger Ailes*,
  NEW YORK TIMES (Dec. 13, 2016), available at
  https://www.nytimes.com/2016/ 12/13/business/fox-faces-new-lawsuit-
  claiming-harassment-by-roger-ailes.html ............................................................15

Twenty-First Century, *2016 Annual Report*, (Aug. 10, 2016), available at
  https://www.21cf.com/sites/default/files/uploaded/investors/annual-
  reports/2016_21cf_annual_report.pdf........................................................................5

## PRELIMINARY STATEMENT

Plaintiff Lidija Ujkic p/k/a Lidia Curanaj ("Plaintiff"), a freelance reporter with local television station WNYW/Channel 5 ("Fox5"), purports to bring this employment discrimination case on the basis of her national origin (Albanian), her gender (female), an alleged disability (an unidentified lupus-like illness), her age (38), and her pregnancy status.  Not content with suing her actual employer, Fox Television Stations, LLC ("FTS"), which owns Fox5, and Fox5's news director, Byron Harmon, she also brings claims against two of FTS's indirect corporate parents, Twenty-First Century Fox, Inc. ("Twenty-First Century") and Fox Entertainment Group, LLC ("Fox Entertainment").[1]  Because neither Twenty-First Century nor Fox Entertainment employs Plaintiff, has any contractual relationship with her, or manages the day to day conditions of her employment, they move for dismissal of all of Plaintiff's claims against them pursuant to Fed. R. Civ. P. 12(b)(6).

In addition, all Defendants move to strike Plaintiff's irrelevant, prejudicial and time-barred allegations about Roger Ailes, the former Chairman and Chief Executive Officer of Fox News Network ("Fox News").  Ailes resigned from Fox News in July 2016 after an investigation into allegations of sexual misconduct made by former Fox News anchor Gretchen Carlson.  Plaintiff has not made any claims of sexual misconduct in this case and she has not named either Ailes or Fox News as a defendant.  Nonetheless, the Complaint prominently features accusations made by *other women* about Ailes's alleged sexual harassment *of them.*  It also highlights a pair of encounters that Plaintiff had with Ailes almost six years ago, when he allegedly declined to hire her at Fox News, the national cable network.  Plaintiff's allegations about Ailes have no

---

[1]      Twenty-First Century and Fox Entertainment are jointly referred to as the "Parent Companies."  FTS, Harmon and the Parent Companies are collectively referred to as "Defendants."

bearing whatsoever on her case, which concerns only her employment as a freelance reporter by Fox5 and Mr. Harmon's alleged discrimination against her, none of which has anything to do with sexual harassment or other sexual misconduct.

Plaintiff's motivations for injecting Ailes into her dispute are predictable and transparent. She seeks to exploit the media's appetite for stories about Ailes to attract more publicity for her own claims of employment discrimination by a local TV station; she also hopes to taint a jury's perceptions of FTS and Mr. Harmon should this case go to trial. In addition to being irrelevant to her claims and prejudicial to Defendants, any claim based on those allegations would be long since time-barred. Plaintiff, by her own account, knew that Ailes would not hire her to work at Fox News in May 2011, months before she started to work for Fox5. The time to bring an employment claim based on that adverse employment action would have expired nearly three years ago, in 2014. This Court should reject Plaintiff's opportunistic attempt to insert irrelevant, prejudicial and time-barred allegations into her Complaint, and Paragraphs 1–5, 8–9, and 21–38 of the Complaint should be stricken with prejudice pursuant to Fed. R. Civ. P. 12(f).

## STATEMENT OF FACTS

The key facts are drawn from the allegations of the Complaint—which are assumed to be true solely for purposes of these motions—the documents governing Plaintiff's employment terms, and the declaration of Jean Fuentes attesting to the corporate structures of, and relationships among, the Defendants.[2]

---

[2]    The Parent Companies recognize that to the extent the declaration and annexed exhibits are not deemed to be integral to the Complaint, this Court may, at its discretion, convert the motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(d); *Sira v. Morton*, 380 F.3d 57, 68 (2d Cir. 2004) (holding that so long as "all parties ... [are provided] a reasonable opportunity to present all material made pertinent to such a

### A.    Plaintiff's Allegations About Her Employment at Fox5

Plaintiff began working as a part-time freelance reporter for Fox5 on November 2, 2011.
Compl. ¶ 39.  She remains employed at Fox5 today in the same capacity.  *Id.* ¶ 16.  Plaintiff
worked at Fox5 for five years before she first sent, through her counsel, a letter dated November
8, 2016 complaining about alleged discriminatory conduct, bypassing the grievance procedure in
her union contract.  *Id.* ¶ 101; Decl. Ex. 1 § 3.1.  Soon afterwards, Plaintiff filed her Complaint,
alleging employment discrimination at Fox5.  *Id.* ¶¶ 39–100.  The Complaint charges Defendants
Harmon, the Vice President, News Director of Fox5, and FTS with the following statements and
conduct:

- Comments or remarks by Mr. Harmon about Plaintiff's appearance, including "[t]elling Plaintiff that she cannot anchor because she is 'not attractive enough';" that she "'look[s] like shit' or that she 'looks sick.'"  (Compl. ¶¶ 7; 59);

- Remarks about Plaintiff's putative Albanian heritage,[3] including asking Plaintiff whether her family was connected to the "mob," stating that "Albanians love the mafia," and that "all Albanians are doormen or criminals," and referring to Plaintiff as "Ms. Albania."  (*Id.* ¶¶ 7; 77–81);

- Failing to make Plaintiff a full time reporter (or anchor) while "providing full time reporter positions to at least eight less qualified employees, all of whom are substantially younger than" Plaintiff.  (*Id.* ¶¶ 7; 65–69);

- Cutting Plaintiff's shifts to three days per week instead of four or five days, after Plaintiff complained that the way her shifts were being scheduled was "worsening

---

motion," the Court may convert the motion and dismiss the case as a summary judgment motion).

[3]    In her Complaint, Plaintiff asserts that she is not from Albania but from Montenegro. Compl. ¶ 79.  On the Internet and on social media, however, she routinely refers to herself as "Albanian-American."  *See, e.g.*, Plaintiff's website, Section "About Me" (describing herself as "the first Albanian-American reporter in the US"), available at http://www.lidianews.com/about-me (last visited January 27, 2017); Plaintiff's Twitter page, *Lidia Curanaj Twitter Biography* (calling herself an "Albanian American NYC reporter"), available at https://twitter.com/lidianews?lang=en (last visited January 27, 2017).

the symptoms of her [lupus-like] illness" and failing to accommodate her illness by giving her a regular schedule.  (*Id*. ¶¶ 60–64);

- Remarks and conduct by Mr. Harmon allegedly directed to other female Fox5 personnel, including removing Sharon Crowley, a woman over 40, from the position of main fill-in anchor and telling her that she was "too old to anchor" and "look[ed] like a Midwestern soccer mom;" telling a pregnant employee that she would "rather stay at home and spend time with [her] baby," and telling another female employee that he had recently promoted "I hope you are not planning on getting pregnant anytime soon."  (*Id*. ¶¶ 7; 73; 93–95);

- Refusing to allow Plaintiff to anchor "cut-ins" or feature her in promotional videos, and regularly failing to "recognize or compliment her significant accomplishments."  (*Id*. ¶¶ 75–76);

- Denying Plaintiff a regular schedule upon her return from her anticipated maternity leave; accusing Plaintiff of "talking shit" about Mr. Harmon; and taking Plaintiff off the weekend schedule at Fox5, thereby reducing her hours and pay (*Id*. ¶¶ 93, 98–100); and

- Retaliating against Plaintiff after her lawyer sent his November 8, 2016 letter to Fox5 putting Fox5 on notice of her claims, by "significantly cutting her hours" so that she is often scheduled to work only two days per week.  (*Id*. ¶¶ 101–103).

All of these allegations are denied in the Answer served by Defendants FTS and Harmon.

*See* Docket No. 21.  They are the sole basis for Plaintiff's claims of discriminatory conduct,

hostile work environment and retaliation under 42 U.S.C. § 1981 and the New York State and

New York City Human Rights Laws ("NYSHRL" and "NYCHRL," respectively).  Plaintiff does

not make any allegations of sexual harassment or other sexual misconduct against any of the

Defendants.

## B.   Defendants' Human Resources and Corporate Structures

Plaintiff's allegations arise from her employment as a part-time reporter at Fox5, which is

owned by FTS.  Decl. ¶¶ 2, 7.[4]  Defendant Twenty-First Century is a publicly held, diversified

---

[4]   Citations to "Decl." are to the Declaration of Jean Fuentes, dated February 1, 2017, submitted in support of the Parent Companies' Motion to Dismiss.

global media and entertainment company.  It has several subsidiaries, one of which is 21st

Century Fox America, which owns Fox Entertainment Group Holdings, which in turn owns

Defendant Fox Entertainment.  Decl. ¶¶ 8-9.  Fox Entertainment operates in three distinct

business segments in the United States: filmed entertainment; television (including both

broadcast network programming and local television stations); and cable network programming.

Twenty-First Century, *2016 Annual Report* (Aug. 10, 2016), available at https://www.21cf.com

/sites/default/files/uploaded/investors/annual-reports/2016_21cf_annual_report.pdf.  Fox

Entertainment has several subsidiaries, one of which is Fox Television Holdings, which in turn

has several subsidiaries, one of which is Defendant FTS.  Decl. ¶¶ 8-9.  FTS owns and operates a

number of television stations, including WNYW (Fox5).  Decl. ¶ 7.

Twenty-First Century and Fox Entertainment are thus indirect corporate parents at

several levels remove from FTS.  Neither of them participates in the day to day employment

decisions at Fox5.  Decl. ¶¶ 9-10, 14, 18.  Fox5's employment decisions are managed by its local

human resources department, which consults with FTS's legal and human resources departments

on some employment-related matters such as discipline and termination.  Decl. ¶ 10.  Any

employment decision that needs approval outside of the Fox5 human resources department is

escalated to more senior managers at FTS, not to Twenty-First Century or Fox Entertainment.

Decl. ¶ 14.  Such decisions typically involve high profile employees whose salaries (unlike those

of a part-time employee such as Plaintiff) would impact the overall budget of the station.  *Id*.

Fox5 primarily relies on its own personnel for recruiting and hiring new employees.  The

managers at Fox5, including Defendant Harmon, are responsible for supervising Fox5 news

employees, including everything from scheduling work shifts to disciplinary actions, which they

may do in consultation with FTS's legal and human resources departments as appropriate.  Decl.

¶¶ 11-12.  If a Fox5 employee files a complaint regarding the Fox5 newsroom, Fox5 or FTS

assumes the responsibility of investigating, managing, and resolving it.  Decl. ¶ 16.

      As a union member, Plaintiff's employment is governed by a collective bargaining

agreement negotiated between her union and FTS, who are the only signatories to the agreement.

Decl. ¶ 3.  Thus, Plaintiff does not participate in the regular benefit plans of FTS employees, let

alone participate in the same plans as the Parent Companies' employees.  Both Plaintiff's W-2

forms and pay stubs name "Fox Television Stations, LLC" as her employer.  Decl. ¶¶ 4-5; Decl.

Exs. 2 and 3.  Plaintiff's ultimate supervisor is the Vice President, News Director of Fox5, Mr.

Harmon, who is also an employee of FTS.  Decl. ¶ 6; Decl. Ex.  4.

      FTS, in turn, makes its own employment decisions.  Decl. ¶ 18.  It does not require

approval from either Parent Company to recruit, hire, retain, compensate, discipline, or terminate

its employees, especially not employees who work at local news stations such as Fox5.  *Id.*  FTS

maintains robust antidiscrimination policies, similar to those of the Parent Companies, and

assumes direct responsibility for implementing them.  Decl. ¶ 15.  In addition to keeping a

separate human resources department, FTS also maintains its own office space, keeps separate

accounting records, and prepares its own budgets.  Decl. ¶¶ 18, 20–23, 25.  The personnel in the

financial and human resources departments of FTS do not overlap with those in the

corresponding departments of the Parent Companies.  Decl. ¶ 23.

## ARGUMENT

### I.    The Claims Against Twenty-First Century and Fox Entertainment Should Be Dismissed Because They Are Not Plaintiff's Employers

      Plaintiff's employment claims have nothing to do with either Twenty-First Century or

Fox Entertainment, neither of which employs her.  Instead, the allegations in the Complaint

concern only Fox5, and Fox5's news director, Mr. Harmon.  Such allegations cannot be imputed

to the Parent Companies because FTS is not an integrated enterprise with either of them. Plaintiff alleges no facts to demonstrate that either of the Parent Companies had any direct interaction with Plaintiff, hired Plaintiff, or had any knowledge of how she was treated at Fox5. Instead, Plaintiff only parrots the legal conclusion that both Twenty-First Century and Fox Entertainment have "met the definition of an 'employer' of Plaintiff under all applicable statutes." Compl. ¶¶ 18–19. These bare allegations do not come close to satisfying Plaintiff's burden to allege facts sufficient to state her claims against corporations that are not Plaintiff's employer. *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 256 (2d Cir. 2014) (affirming dismissal of complaint because "broad generalizations drawn from job titles, classifications, or divisions, and conclusory assertions of sex discrimination, cannot suffice.")

The Second Circuit has long recognized the general principle that a parent corporation is a separate entity from its subsidiary and cannot be liable for the employment decisions of its subsidiary. *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995). "[A] parent and subsidiary cannot be found to represent a single, integrated enterprise in the absence of evidence of (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Id.* The "single employer doctrine," as set forth above, applies not only for Title VII claims, like those in *Cook*, but also claims brought under Section 1981 as well as the NYSHRL and NYCHRL. *Ayala v. Metro One Sec. Sys., Inc.*, No. 11-CV-233, 2011 WL 1486559, at *5 (E.D.N.Y. Apr. 19, 2011).

No one factor is dispositive. *Richard v. Bell Atl. Corp.*, 946 F. Supp. 54, 62 (D.D.C. 1996) (citing *Cook* and other Circuit cases). Indeed, this Court has recognized that even when some factors might suggest a "single employer," other factors, such as the fact that plaintiff's employment is "exclusively governed by a union agreement between a union and the [immediate

employer]," should carry considerably more weight.  *Suares v. Cityscape Tours, Inc.*, No. 11 Civ. 5650, 2014 WL 969661, at *6 (S.D.N.Y. Mar. 12, 2014), *aff'd*, 603 F. App'x 16 (2d Cir. 2015).  As a union member, Plaintiff's employment is similarly governed by a collective bargaining agreement, signed only by her union and FTS.  Decl. Ex. 1.  As such, Plaintiff cannot impute employer liability to either of the Parent Companies.

### A. The Fox Television Stations Make Their Own Employment Decisions and Control Their Own Labor Relations

In assessing whether the single employer doctrine applies, the Second Circuit has held that the second factor—centralized control of labor relations—is most important to the inquiry. *Cook*, 69 F.3d at 1241.  The Parent Companies cannot be liable unless Plaintiff can show that they exerted "an amount of participation [that wa]s sufficient and necessary to the total employment process, even absent total control or ultimate authority over hiring decisions." *Id*. Here, FTS, not the Parent Companies, controlled the recruiting, hiring, retaining, compensating, disciplining and terminating of FTS employees without the need for specific approval from the Parent Companies.  Decl. ¶ 18.  In *Herman v. Blockbuster Entertainment Group*, the court held that Blockbuster, which partially owned plaintiff's actual employer, Discovery Zone, was not liable as an employer when Discovery Zone "had its own human resources department" and the "director of Discovery Zone's human resources department [was] in charge of the day to day decisions on Discovery Zone personnel."  18 F. Supp. 2d 304, 311 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 899 (2d Cir. 1999).  Similarly, Fox5's human resources department is in charge of day to day decisions regarding newsroom personnel, with direct oversight by the human resources department at FTS, not the Parent Companies.  Decl. ¶¶ 10, 12, 18.

The second factor weighs decisively against finding a single employer relationship here, particularly because a collective bargaining agreement between Plaintiff's union and FTS

governs her compensation and benefit plans; she does not participate in the same plans as FTS's non-union employees.  Decl. ¶ 3; Decl. Ex. 1.  *See Suares*, 2014 WL 969661, at \*6 (citing existence of union agreement governing the terms and conditions of Plaintiff tour guide's employment with her direct employer, the JAD Defendants, as key factor, notwithstanding interrelation of operations between defendants); *Herman*, 18 F. Supp. 2d at 311 (noting that "there is no evidence that Discovery Zone employees participated in the same benefit or pension plans as Blockbuster employees…").

The incongruity of naming the Parent Companies as defendants is further confirmed by the fact that they are not even alleged to have played a role in the alleged discriminatory treatment of Plaintiff.  *See, e.g., Herman*, 18 F. Supp. 2d at 312 ("Plaintiffs offer no evidence that Blockbuster played any role in the employment decisions and allegedly discriminatory conduct particularly affecting them").  Despite her attempts to drag the Parent Companies into this case, Plaintiff has not alleged that Mr. Harmon's alleged discrimination against her can be imputed to the Parent Companies.  She does not (and cannot) allege that she worked for the Parent Companies and she does not assert that she complained of the allegedly discriminatory treatment to anyone at FTS (or to her union), much less to anyone at the Parent Companies.[5] *Compare Mas Marques v. Digital Equip. Corp*, 637 F.2d 24, 27 n.5 (1st Cir. 1980) (holding parent not liable for alleged discrimination claim against subsidiary even though the parent investigated plaintiff's complaint and cooperated with EEOC).  In sum, the Parent Companies

---

[5] And despite her attempt to drag alleged sexual misconduct by Ailes into the Complaint, she has not asserted (and at this late date, cannot assert) a claim against the Parent Companies based on those interactions.  Prior to his departure, Ailes was not employed by either of the Parent Companies.

are not alleged to have had any input into Plaintiff's day to day employment at Fox5 and cannot be deemed to have been her employers.

**B.    FTS's Operations Are Separate and Distinct from the Operations of the Parent Companies**

Plaintiff has also failed to allege any facts to suggest that the first factor of the single employer test could be met here—namely, that the operations of FTS were interrelated with those of the Parent Companies.  In determining whether operations are interrelated, courts look to a variety of factors, including whether the different entities have separate office spaces, whether the entities maintain "separate bank accounts and separate payroll accounts," and whether they independently prepare their "own financial statements, budgets and forecasts." *See, e.g., Herman*, 18 F. Supp. 2d at 309, 310 (citing these factors as evidence of insufficient interrelation of operations); *Balut v. Loral Elecs. Sys.*, 988 F. Supp. 339, 345-46 (S.D.N.Y. 1997) (finding no interrelation of operations based, in part, on lack of common office space and the fact that the parent engaged only in periodic review of the subsidiary's operations), *aff'd*, 166 F.3d 1199 (2d Cir. 1998).

Plaintiff alleges no nexus between FTS and the Parent Companies in her Complaint, much less a sharing of infrastructure or operating practices between them.  FTS maintains separate office space, financial records, departments, and management personnel from the Parent Companies.  Decl. ¶¶ 20-25.[6]  There is no sharing of operations, as would be required to hold the Parent Companies liable for FTS's actions.

---

[6]    Furthermore, within FTS, the local stations, such as Fox5, file as independent entities for licensing applications and renewals to the Federal Communications Commission. Decl. ¶ 13.  The local stations bid on government contracts as independent entities without the involvement of either of the Parent Companies.  *Compare Balut*, 988 F. Supp. at 346 (finding no interrelation of operations when parent only reviewed bids above ten million dollars and when subsidiary "procured its own contracts.").

### C.     FTS's Management Is Separate and Distinct From Management of the Parent Companies

Plaintiff does not allege that either of the Parent Companies ran FTS in a "direct, hands-on fashion, establishing the operating practices and management practices of [FTS or Fox5]." *Cook*, 69 F.3d at 1241.  Plaintiff does not allege—nor can she allege—that the same personnel managed the operations and personnel decisions of FTS and the Parent Companies.  Decl. ¶¶ 10, 12, 14, 18, 22-24.   Management of FTS sets the budgets, including expenses and compensation schemes of the individual television stations, subject only to periodic review by the financial department and management of the Parent Companies.  Decl. ¶ 25.  Such ordinary oversight exerted by a parent over a subsidiary is not enough to hold the former liable for employment claims involving the latter.  *Balut*, 988 F. Supp. at 347 ("the fact that Balut and others presented biannual reviews to Loral and discussed some issues on a weekly basis does not show 'common management.'  This is no more than what a parent typically requires of a subsidiary.")

The only named individual defendant, Byron Harmon, is an employee of FTS, and his employment contract is with that entity alone.  Decl. ¶ 6; Decl. Ex. 4.  Additionally, according to Plaintiff's W-2 forms and pay stubs, FTS was her sole employer at all relevant times.  Decl. ¶ 4; Decl. Exs. 2 and 3.  *Cf.  Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 341 (2d Cir. 2000) (finding that, where Plaintiff produced pay stubs that showed his earnings as being "paid on behalf of Columbia Pictures Industries" through "[Sony Pictures] Corporate Services, Inc.," a reasonable jury "could conclude that [Columbia] exercised sufficient control over the terms and conditions of [plaintiff's] employment to qualify as his 'employer' for purposes of a discrimination claim").

Because Plaintiff does not and cannot allege any facts establishing that the Parent Companies are her employer, all of her claims against Twenty-First Century and Fox Entertainment should be dismissed with prejudice.

## II.     The Allegations About Ailes and Plaintiff's Interactions with Him Should Be Stricken

Plaintiff seeks to tarnish the named corporate defendants by imputing Ailes' alleged conduct while at Fox News to them through sensationalized and inflammatory allegations that have nothing to do with her claims.  Compl. ¶¶ 1–5, 8–9, 21–38 (the "Ailes allegations"). Plaintiff alleges that there was a "misogynistic culture" at Twenty-First Century under Ailes, that multiple female employees came forward with allegations of sexual misconduct by Ailes, that, following an internal investigation, "Rupert Murdoch, the owner of Fox, demanded that Ailes step down," and that thereafter, "Fox's internal investigation unearthed evidence that sexual harassment of women employees extended beyond Ailes and his immediate circle."  *Id*. ¶¶ 1–3. She then speculates that the "top-down harassment spread throughout Fox," including to Fox5 and Mr. Harmon, even though she herself does not allege that she was sexually harassed by Mr. Harmon or anybody else at Fox5, or that she witnessed any sexual harassment of other women at Fox5.  *Id*. ¶¶ 4–5, 8–9.

Plaintiff further alleges that she met Ailes at a dinner in February 2011, and that he interviewed her in May of that year for a potential job with Fox News.  She alleges that Ailes made inappropriate, sexually harassing comments to her during the May 2011 interview, that he later asked Senator Greg Ball, whom Plaintiff had earlier dated, whether she "put out" sexually, and that when Ball told Ailes that she was a "very nice girl," implying that she would not "put out," Ailes declined to hire her for Fox News and suggested she reach out to Fox's local stations instead.  Compl.  ¶¶ 31–35.  Plaintiff asserts that she believed at the time that she did not get the

job at Fox News because of Ailes' discovery that she would be unwilling to submit to him sexually.  Compl. ¶¶ 36–38.

All of these allegations should be stricken because "(1) [there is] no evidence in support of the allegations that would be admissible; (2) [] the allegations have no bearing on the relevant issues in the case; and (3) [] to permit the allegations to stand would result in prejudice to the movant." *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001).

### A.  The Ailes Allegations Are Irrelevant and Prejudicial

Putting aside whether there is any truth to the Ailes allegations, they are irrelevant to Plaintiff's employment at FTS and could only inflame passions and unfairly prejudice Defendants.

Plaintiff's pejorative mischaracterization of the "misogynistic culture" at Fox News, and her reliance upon the women who came forward to complain about Ailes, have no bearing on her employment at a separate and distinct entity, FTS, with separate and distinct management from Fox News.  Nor does Plaintiff herself allege any nexus between the two.  She does not allege that Ailes had any control over her day to day employment at Fox5 or that Ailes took any action with respect to her employment at Fox5.  Indeed, her Complaint reflects that Ailes had resigned before some of the allegedly discriminatory actions even took place.  Compl. ¶ 3.  Plaintiff's only interactions with Ailes are said to have occurred almost six years ago, when he allegedly declined to hire her for Fox News, the national cable news network.  The Ailes allegations have no connection to Plaintiff's claims that she was discriminated against on the basis of her age, race, ethnicity, national origin, gender, and pregnancy as a part-time reporter working for the local Fox5 television station, particularly since she has not alleged that she was ever sexually harassed there.

Allegations that "have no real bearing on the case, will likely prejudice the movant, or …
have criminal overtones" should be stricken from the case. *G-I Holdings, Inc. v. Baron &
Budd,* 238 F. Supp. 2d 521, 556 (S.D.N.Y. 2002) (granting motion to strike certain allegations
because they are "amorphous, unspecific and cannot be defended against" and "harm [the
defendant] in the public eye and could influence prospective jury members") (citations omitted).
In fact, even where, unlike here, an allegation is "relevant to the controversy, it nonetheless may
be stricken if it is scandalous or set out in 'needless detail.'" *Tucker v. Am. Int'l Grp., Inc.*, 936
F. Supp. 2d 1, 16 (D. Conn. 2013) (citing *Cabble v. Rollieson*, No. 04–CV–9413, 2006 WL
464078, at *11 (S.D.N.Y. Feb. 27, 2006) (striking certain references to other litigation in the
complaint based on lack relevance to the action at hand); *cf. Urashka v. Griffin Hosp.*, 841 F.
Supp. 468, 476–77 (D. Conn. 1994) (dismissing plaintiff's complaint but noting that "if the court
were to reach the merits of the defendants' motion to strike" allegations regarding assistant
director's derogatory sexual references to the penis of male employee and 'little tush' of female
volunteer, when the action was based on age discrimination against plaintiff, "that motion would
be granted").

It is clear that the Ailes allegations are designed to "inflame the reader." *Morse v.
Weingarten,* 777 F. Supp. 312, 319 (S.D.N.Y. 1991) (striking references that were "immaterial
and impertinent to the case"). Complaints from the "24 women" who allegedly *worked with
Ailes* have no bearing on Plaintiff, who did not work with Ailes. Yet Plaintiff rehashes the other
women's stories, Compl. ¶ 2, presumably because she wants to take advantage of the front-page
media frenzy spawned by Gretchen Carlson's complaint and Ailes's resignation from Fox News
in July 2016. The media was still reporting on the allegations surrounding the other women's
complaints when Plaintiff filed her own lawsuit. She is clearly trying to ride on the coattails of

Ailes's notoriety to unduly prejudice FTS and the Parent Companies in the eyes of the public and potential jurors.

Indeed, Plaintiff's counsel has already started making the rounds in the press, telling the New York Times that Plaintiff's allegations are comparable to "the conduct of many of Fox's male managers reported by countless women over the past six months," and that they "intend on holding Fox accountable for this conduct, and sending a message to employers everywhere that there are severe consequences to discriminating against female employees."  Emily Steel, *Fox Faces New Lawsuit Claiming Harassment by Roger Ailes*, New York Times (Dec. 13, 2016), available at https://www.nytimes.com/2016/12/13/business/fox-faces-new-lawsuit-claiming-harassment-by-roger-ailes.html.  This tactic appears to be standard operating procedure for Plaintiff's counsel, who has had scandalous, prejudicial and irrelevant allegations struck where, as here, they were inserted gratuitously to prejudice defendants.  *See, e.g.*, *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 511–12 (S.D.N.Y. 2013) (striking allegations about company's alleged mistreatment of customers in dispute brought by former employee over compensation, where the plaintiff was represented by Douglas Wigdor, counsel of record in this case).  Here too, Plaintiff's allegations regarding Ailes should be stricken on the grounds that they are irrelevant and prejudicial to the Defendants.

### B.      The Ailes Allegations Are Time-Barred

The Ailes allegations should be stricken for the additional reason that they are time-barred.  Plaintiff implicitly concedes as much, since she does not bring a claim against Ailes or Fox News in her suit.  Time-barred allegations are inherently irrelevant and can be stricken.  *See Finnane v. Pentel of Am., Ltd.*, 43 F. Supp. 2d 891, 897–98 (N.D. Ill. 1999) ("The time-barred incidents cannot form the basis of a claim and thus are properly stricken from the complaint.").

For employment discrimination claims, the three-year statute of limitations begins to run when the employee has "reason to suspect" the adverse action was discriminatory. *Singh v. Wells*, 445 F. App'x 373, 377 (2d Cir. 2011). The claim is "not tolled or delayed pending the employee's realization that the conduct was discriminatory unless [he] was actively misled by his employer, or if one of the equitable tolling doctrines, [deception, fraud, misrepresentation by the employer], applies." *Id.*

Whatever Ailes said during Plaintiff's interview or his purported conversation with Senator Ball, Plaintiff was well aware of it in 2011. Certainly she knew what was said at her interview; Plaintiff also alleges she was "aware that [Ailes] had asked Senator Ball about her sexual proclivities" when Ailes told her shortly thereafter that she was "not ready" for a position at Fox News Company. Compl. ¶¶ 37–38, *see also* Compl. ¶ 36 ("*Based on the temporal proximity* between her private interview with Ailes, the call from Ailes to Senator Ball and Ailes' subsequent decision to not hire her, *it was clear to Ms. Curanaj* that she was "not ready" for FNC because of Ailes [*sic*] discovery that she would be unwilling to submit to him, sexually.") Plaintiff therefore had "reason to suspect"[7] that the adverse employment action taken by Ailes may have been discriminatory when she was not hired by Fox News. *Singh*, 445 F. App'x at 377.

---

[7]    Indeed, the period may begin to run as soon as the plaintiff has notice of the adverse action, not when she has reason to suspect it was caused by discrimination. *See Cetina v. Longworth*, 583 F. App'x 1, 3 (2d Cir. 2014) ("this Court has held that the limitations period begins to run when the plaintiff receives notice of the adverse action. Because Cetina received notice of this promotion…in February 2010—the official announcement does not control the start of the [statute of limitations period]."), *cert. denied*, _U.S._, 135 S. Ct. 1531 (2015); s*ee also Harris v. City of N.Y.*, 186 F.3d 243, 247 (2d Cir. 1999) (holding that failure to promote claim accrued when the plaintiff "knew or should have known that he had been passed over for promotion").

Because the Ailes allegations are irrelevant to Plaintiff's claims, prejudicial and time barred, this Court should strike paragraphs 1–5, 8–9, and 21–38 of the Complaint with prejudice.

## CONCLUSION

For the reasons set forth above, and in the accompanying declaration of Jean Fuentes, all Counts of the Complaint should be dismissed with prejudice as to Defendants Twenty-First Century and Fox Entertainment pursuant to Fed. R. Civ. P. 12(b)(6), and paragraphs 1–5, 8–9, and 21–38 of the Complaint should be stricken pursuant to Fed. R. Civ. P. 12(f).

Dated:    New York, New York
          February 2, 2017

                                        Respectfully submitted,

                                        DECHERT LLP


                                        By:  */s/ Linda C. Goldstein*
                                              Andrew J. Levander
                                              Linda C. Goldstein
                                              Nicolle L. Jacoby
                                              Jamie R. Hacker
                                              Diana C. Wang

                                         1095 Avenue of the Americas
                                         New York, New York 10036
                                         Telephone: (212) 698-3817
                                         Fax: (212) 698-0684
                                         linda.goldstein@dechert.com

                                         *Attorneys for Defendants Twenty-First*
                                         *Century Fox, Inc., Fox Entertainment*
                                         *Group LLC, Fox Television Stations, LLC,*
                                         *and Byron Harmon*