UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| LIDIJA UJKIC p/k/a LIDIA CURANAJ, | : | |
| | : | |
| Plaintiff, | : | Case No. 1:16-CV-9608 (AJN) |
| | : | |
| – against – | : | (ECF Case) |
| | : | |
| TWENTY-FIRST CENTURY FOX, INC., FOX | : | |
| ENTERTAINMENT GROUP LLC, FOX | : | |
| TELEVISION STATIONS, LLC, and BYRON | : | |
| HARMON, in his individual and professional | : | |
| capacities, | : | |
| | : | |
| Defendants. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# MEMORANDUM OF LAW IN SUPPORT OF
## (1) MOTION BY DEFENDANTS TWENTY-FIRST CENTURY FOX, INC. AND FOX ENTERTAINMENT GROUP LLC TO DISMISS THE AMENDED COMPLAINT AND (2) MOTION BY ALL DEFENDANTS TO STRIKE CERTAIN ALLEGATIONS

DECHERT LLP
Andrew J. Levander
Linda C. Goldstein
Nicolle L. Jacoby
Diana C. Wang
1095 Avenue of the Americas
New York, New York 10036
Tel. (212) 698-3500
linda.goldstein@dechert.com

*Attorneys for Defendants Twenty-First Century Fox, Inc., Fox Entertainment Group LLC, Fox Television Stations, LLC and Byron Harmon*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 3

      A.     Plaintiff's Allegations About Her Employment At Fox5 ...................... 3

      B.     Defendants' Human Resources And Corporate Structures.................... 6

ARGUMENT ................................................................................................................... 8

I.     The Claims Against Twenty-First Century And Fox Entertainment Should Be
Dismissed Because The Parent Companies Are Not Plaintiff's Employers.................... 8

      A.     Plaintiff Is Employed By FTS, Not By The Parent Companies ........................ 9

      B.     The Fox Television Stations Make Their Own Employment Decisions
And Control Their Own Labor Relations ............................................. 10

      C.     FTS's Operations Are Separate And Distinct From The Operations Of The
Parent Companies ................................................................................ 13

      D.     FTS's Management Is Separate And Distinct From Management Of The
Parent Companies ................................................................................ 14

      E.     Generalized Allegations About "Corporate Culture" Are Irrelevant To The
Governing Legal Standard .................................................................. 15

II.    The Allegations About Ailes and O'Reilly Should Be Stricken....................................... 17

      A.     The Ailes And O'Reilly Allegations Are Irrelevant And Prejudicial.................. 18

      B.     The Ailes Allegations Are Time-Barred ............................................... 21

CONCLUSION ................................................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andino v. Fischer*,
  698 F. Supp. 2d 362 (S.D.N.Y. 2010)......................................................................16

*Ayala v. Metro One Sec. Sys., Inc.*,
  No. 11-CV-233, 2011 WL 1486559 (E.D.N.Y. Apr. 19, 2011) .............................................9

*Balut v. Loral Elec. Sys.*,
  988 F. Supp. 339 (S.D.N.Y.1997), *aff'd*, 166 F.3d 1199 (2d Cir. 1998)....................13, 14, 15

*Cetina v. Longworth*,
  583 F. App'x 1 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1531 (2015)....................................22

*Cook v. Arrowsmith Shelburne, Inc.*,
  69 F.3d 1235 (2d Cir. 1995)................................................................................ *passim*

*E.E.O.C. v. Port Auth. of N.Y. & N.J.*,
  768 F.3d 247 (2d Cir. 2014)....................................................................................8

*Finnane v. Pentel of Am., Ltd.*,
  43 F. Supp. 2d 891 (N.D. Ill. 1999) ..........................................................................21

*G-I Holdings, Inc. v. Baron & Budd*,
  238 F. Supp. 2d 521 (S.D.N.Y. 2002).........................................................................19

*Guzman v. News Corp.*,
  No. 09 Civ. 09323 LGS, 2013 WL 5807058 (S.D.N.Y. Oct. 28, 2013)...........................10, 11

*Harris v. City of New York*,
  186 F.3d 243 (2d Cir. 1999).....................................................................................22

*Herman v. Blockbuster Entertainment Group*,
  18 F. Supp. 304 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 899 (2d Cir. 1999)............................11, 13

*Kearney v. Kessler Family LLC*,
  No. 11 Civ. 06016, 2011 WL 2693892 (W.D.N.Y. July 11, 2011).......................................16

*Mas Marques v. Digital Equip. Corp*,
  637 F.2d 24 (1st Cir. 1980).......................................................................................13

*Morse v. Weingarten*,
  777 F. Supp. 312 (S.D.N.Y. 1991) .............................................................................20

*Oram v. SoulCycle LLC*,
   979 F. Supp. 2d 498 (S.D.N.Y. 2013)....................................................................21

*Parker v. Columbia Pictures Indus.*,
   204 F.3d 326 (2d Cir. 2000)............................................................................9

*Richard v. Bell Atl. Corp.*,
   946 F. Supp. 54 (D.D.C. 1996)........................................................................10

*Roe v. City of New York*,
   151 F. Supp. 2d 495 (S.D.N.Y. 2001)................................................................18

*Singh v. Wells*,
   445 F. App'x 373 (2d Cir. 2011) .....................................................................22

*Sira v. Morton*,
   380 F.3d 57 (2d Cir. 2004)............................................................................3

*Snyder v. Advest, Inc.*,
   No. 06 Civ. 1426 RMB, 2008 WL 4571502 (S.D.N.Y. June 8, 2008)...................................12

*Suares v. Cityscape Tours, Inc.*,
   No. 11 Civ. 5650, 2014 WL 969661 (S.D.N.Y. Mar. 12, 2014), *aff'd*,
   603 F. App'x 16 (2d Cir. 2015) ......................................................................20

*Tucker v. Am. Int'l Grp., Inc.*,
   936 F. Supp. 2d 1 (D. Conn. 2013)...................................................................20

*Urashka v. Griffin Hosp.*,
   841 F. Supp. 468 (D. Conn. 1994)....................................................................20

*Zoldak v. Tacala, Inc.*,
   No. Civ. A. 398 CV 1565 (CFD), 2000 WL 1576419
   (D. Conn. Sept. 27, 2000) .........................................................................12

**Statutes/Rules**

42 U.S.C. § 1981..............................................................................................5, 9

Fed. R. Civ. P. 12(b)(6)...................................................................................1, 23

Fed. R. Civ. P. 12(d) .........................................................................................3

Fed. R. Civ. P. 12(f)........................................................................................2, 23

## PRELIMINARY STATEMENT

One would not know from reading the first twenty-seven paragraphs of the Amended Complaint ("Am. Compl.") that Plaintiff Lidija Ujkic p/k/a Lidia Curanaj ("Plaintiff") does not assert any claims for sexual harassment. Rather, Plaintiff, who is a freelance reporter with local television station WNYW/Channel 5 ("Fox5"), claims that she has been subject to employment discrimination on the basis of her national origin (Albanian), her gender (female), an alleged disability (an unidentified lupus-like illness), her age (38), and her pregnancy status. She also alleges that Fox5 has retaliated against her for bringing this suit. Not content with suing her actual employer, Fox Television Stations, LLC ("FTS"), which owns Fox5, and Byron Harmon, who is Fox5's Vice-President, News Director, she also brings claims against two of FTS's indirect corporate parents, Twenty-First Century Fox, Inc. ("Twenty-First Century") and Fox Entertainment Group, LLC ("Fox Entertainment").[1] But neither Twenty-First Century nor Fox Entertainment employs Plaintiff, has any contractual relationship with her, or manages the day to day conditions of her employment. Plaintiff's claims against them should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). These legal defects were identified in the initial motion to dismiss made by Twenty-First Century and Fox Entertainment, but they continue to plague the Amended Complaint.

In addition, all Defendants move to strike Plaintiff's irrelevant and prejudicial allegations about Roger Ailes, the former Chairman and Chief Executive Officer of Fox News Network, LLC ("Fox News"), and Bill O'Reilly, a former host employed by Fox News at Fox News Channel, the national cable network. Ailes separated from Fox News in July 2016 after a review

---

[1]      Twenty-First Century and Fox Entertainment are jointly referred to as the "Parent Companies." FTS, Harmon and the Parent Companies are collectively referred to as "Defendants."

of allegations of sexual misconduct made by former Fox News anchor Gretchen Carlson. O'Reilly was terminated by Fox News on April 19, 2017, after Plaintiff had brought this lawsuit. Plaintiff alleges that she had only two meetings with Ailes in 2011, when he allegedly declined to hire her at Fox News, and no encounters with O'Reilly.  Nonetheless, the Amended Complaint prominently features accusations made by *other women* about Ailes's and O'Reilly's alleged sexual harassment *of them*.  Plaintiff's allegations about Ailes and O'Reilly have no bearing whatsoever on her case, which concerns only her employment as a freelance reporter by the local Fox5 station, and Mr. Harmon's alleged discrimination against her, none of which has anything to do with sexual harassment or other sexual misconduct.

Plaintiff's reasons for injecting Ailes and O'Reilly into her dispute are predictable and transparent.  As demonstrated by the fact that she never even met O'Reilly, and added his name to her lawsuit only after he was fired by Fox News, she seeks to exploit the media's appetite for stories about Ailes and O'Reilly to attract more publicity for her own claims of employment discrimination by a local TV station.  She also hopes to taint a jury's perceptions of FTS and Mr. Harmon should this case go to trial.  In addition to being irrelevant to her claims and prejudicial to Defendants, any claim based on the Ailes allegations would be long since time-barred. Plaintiff, by her own account, knew that Ailes would not hire her to work at Fox News in May 2011, months before she started to work for Fox5.  The time to bring an employment claim based on that adverse employment action would have expired nearly three years ago, in 2014.  This Court should reject Plaintiff's opportunistic attempt to insert irrelevant, prejudicial and time-barred allegations into her pleading, and Paragraphs 1–22, 28, 32, 50–68, 93–94, and 161–65 of the Amended Complaint should be stricken with prejudice pursuant to Fed. R. Civ. P. 12(f).

## STATEMENT OF FACTS

The key facts are drawn from the allegations of the Amended Complaint—which are assumed to be true solely for purposes of these motions—the documents governing Plaintiff's employment terms, and the declaration of Jean Fuentes attesting to the corporate structures of, and relationships among, the Defendants.[2]

### A.  Plaintiff's Allegations About Her Employment At Fox5

Plaintiff began working as a part-time freelance reporter for Fox5 on November 2, 2011. Am. Compl. ¶ 45.  She remains employed at Fox5 today in the same capacity.  *Id.*  Plaintiff worked at Fox5 for five years before she sent, through her counsel, a letter dated November 8, 2016 complaining about alleged discriminatory conduct.  *Id.* ¶ 141.  This letter bypassed the grievance procedure in her union contract, and was the first time Plaintiff had complained of any discrimination.  Decl. Ex. 1 § 3.1.  Soon afterwards, Plaintiff filed her initial Complaint alleging employment discrimination at Fox5, and on April 10, 2017, after the Parent Companies had filed a motion to dismiss, she filed an Amended Complaint.  The Amended Complaint charges Defendants Harmon, the Vice President, News Director of Fox5, and FTS with the following statements and conduct:

---

[2]     The Parent Companies recognize that the declaration and annexed exhibits are not integral to the Amended Complaint.  We nonetheless believe that the allegations in the Amended Complaint warrant dismissal of the Parent Companies as a matter of law.  In particular, Plaintiff was put on notice of the defects in her claims against the Parent Companies but has failed to allege any facts showing that her employment was controlled by either of the Parent Companies.  In the alternative, this Court should convert the motion to dismiss into a motion for summary judgment.  Fed. R. Civ. P. 12(d); *Sira v. Morton*, 380 F.3d 57, 68 (2d Cir. 2004) (holding that so long as "all parties ... [are provided] a reasonable opportunity to present all material made pertinent to such a motion," the Court may convert the motion and dismiss the case on summary judgment).

- Comments or remarks by Mr. Harmon about Plaintiff's appearance, including "[t]elling Plaintiff that she cannot anchor because she is 'not attractive enough,'" that she "'look[s] like shit' or that she 'looks sick.'"  (Am. Compl. ¶¶ 30; 84; 97);

- Remarks about Plaintiff's putative Albanian heritage,[3] including asking Plaintiff whether her family was connected to the "mob," stating that "Albanians love the mafia," and that "all Albanians are doormen or criminals," and referring to Plaintiff as "Ms. Albania." (*Id*.  ¶¶ 30; 117–120);

- Failing to make Plaintiff a full time reporter (or anchor) while "providing full time reporter positions to at least eight less qualified employees, all of whom are substantially younger than" Plaintiff.  (*Id*. ¶¶ 30; 104–115);

- Cutting Plaintiff's shifts to three days per week instead of four or five days, after Plaintiff complained that the way her shifts were being scheduled was "worsening the symptoms of her [lupus-like] illness" and failing to accommodate her illness by giving her a regular schedule.  (*Id*. ¶¶ 100–103);

- Remarks and conduct by Mr. Harmon allegedly directed to other female Fox5 personnel, including removing Sharon Crowley, a woman over 40, from the position of main fill-in anchor and telling her that she was "too old to anchor" and "look[ed] like a Midwestern soccer mom;" telling a pregnant employee that she would "rather stay at home and spend time with [her] baby," and telling another female employee that he had recently promoted "I hope you are not planning on getting pregnant anytime soon." (*Id*. ¶¶ 30; 112; 132–134);

- Refusing to allow Plaintiff to anchor "cut-ins" or feature her in promotional videos, and regularly failing to "recognize or compliment her significant accomplishments." (*Id*. ¶¶ 114–115);

- Denying Plaintiff a regular schedule upon her return from her anticipated maternity leave; accusing Plaintiff of "talking shit" about Mr. Harmon; and taking Plaintiff off the weekend schedule at Fox5, thereby reducing her hours and pay (*Id*. ¶¶ 137–139);

- Retaliating against Plaintiff after her lawyer sent the November 8, 2016 letter putting Fox5 on notice of her claims, by "significantly cutting her hours" so that

---

[3]       In her Complaint, Plaintiff asserts that she is not from Albania but from Montenegro. Am. Compl. ¶¶ 30, 118.  On the Internet and on social media, however, she routinely refers to herself as "Albanian-American."  *See*, *e.g.*, Plaintiff's website, Section "About Me" (describing herself as "the first Albanian-American reporter in the US"), available at http://www.lidianews.com/about-me (last visited May 15, 2017); Plaintiff's Twitter page, *Lidia Curanaj Twitter Biography* (calling herself a "proud mom/wife/Albanian American"), available at https://twitter.com/lidianews?lang=en (last visited May 15, 2017).

she is often scheduled to work only two days per week, and "micromanaging" her by, among other things, admonishing her for running personal errands during work hours, and announcing the fact of her lawsuit to the Fox5 team.  (*Id.* ¶¶ 141–157); and

- Retaliating against Plaintiff by allegedly saying, among other things, that she "isn't winning a penny," "is a liar looking for a payout," and "[a]nyone who backs her up will go down too because she has no case."  (*Id.* ¶¶ 158–159).

All of these allegations are denied in the Amended Answer served by Defendants FTS and Harmon.  *See* Docket No. 45.  They are the sole basis for Plaintiff's claims of discriminatory conduct, hostile work environment and retaliation under 42 U.S.C. § 1981 and the New York State and New York City Human Rights Laws ("NYSHRL" and "NYCHRL," respectively).  Plaintiff does not make any allegations of sexual harassment or other sexual misconduct against any of the Defendants.

In response to the original complaint, the Parent Companies moved to dismiss the claims against them because they are not Plaintiff's employers, nor can they be considered an integrated enterprise with Plaintiff's actual employer, FTS.  *See* Docket No. 23.  The Amended Complaint tries to cure this shortcoming by adding generic allegations about the allegedly common "corporate culture" of all affiliates of Twenty-First Century.  *See e.g.* Am. Compl. ¶¶ 4–22, 161–65.  None of the new allegations is pertinent to the legal analysis, which asks not whether separate corporate affiliates share a common "culture"—a term that is not mentioned in the case law—but whether they share centralized control of labor relations, common management, or interrelated operations.  *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995).

### B.    Defendants' Human Resources And Corporate Structures

Plaintiff's allegations arise from her employment as a part-time reporter at Fox5, which is owned by FTS.  Decl. ¶¶ 2, 7.[4]  Defendant Twenty-First Century is a publicly held, diversified global media and entertainment company.  It has several subsidiaries, one of which is 21st Century Fox America, which owns Fox Entertainment Group Holdings, which in turn owns Defendant Fox Entertainment.  Decl. ¶¶ 8-9.  Fox Entertainment operates in three distinct business segments in the United States: filmed entertainment; television (including both broadcast network programming and local television stations); and cable network programming. Twenty-First Century, *2016 Annual Report* (Aug. 10, 2016), available at https://www.21cf.com /sites/default/files/uploaded/investors/annual-reports/2016_21cf_annual_report.pdf.  Fox Entertainment has several subsidiaries, one of which is Fox Television Holdings, which in turn has several subsidiaries, one of which is Defendant FTS.  Decl. ¶¶ 8-9.  FTS owns and operates a number of television stations, including WNYW (Fox5).  Decl. ¶ 7.

Twenty-First Century and Fox Entertainment are thus indirect corporate parents several levels removed from FTS.  Neither of them participates in the day to day employment decisions at Fox5.  Decl. ¶¶ 9-10, 14, 18.  Fox5's employment decisions are managed by its local human resources department, which consults with FTS's legal and human resources departments on some employment-related matters such as discipline and termination.  Decl. ¶ 10.  Any employment decision that needs approval outside of the Fox5 human resources department is escalated to more senior managers at FTS, not to Twenty-First Century or Fox Entertainment. Decl. ¶ 14.  Such decisions typically involve high profile employees whose salaries (unlike those of a part-time freelancer such as Plaintiff) would affect the overall budget of the station.  *Id.*

---

[4]     Citations to "Decl." are to the Declaration of Jean Fuentes, dated May 12, 2017, submitted in support of the Parent Companies' Motion to Dismiss.

Fox5 primarily relies on its own personnel for recruiting and hiring new employees.  The managers at Fox5, including Defendant Harmon, are responsible for supervising Fox5 news employees, including everything from scheduling work shifts to disciplinary actions, which they may do in consultation with FTS's legal and human resources departments as appropriate.  Decl. ¶¶ 11-12.  If a Fox5 employee files a complaint regarding the Fox5 newsroom, Fox5 or FTS assumes the responsibility of investigating, managing and resolving it.  Decl. ¶ 16.

As a union member, Plaintiff's employment is governed by a collective bargaining agreement negotiated between her union and FTS, who are the only signatories to the agreement. Decl. ¶ 3.  Thus, Plaintiff does not participate in the regular benefit plans of FTS employees, let alone participate in the same plans as the Parent Companies' employees.  Both Plaintiff's W-2 forms and pay stubs name "Fox Television Stations, LLC" as her employer.  Decl. ¶¶ 4-5; Decl. Exs. 2 and 3.  Plaintiff's ultimate supervisor is the Vice President, News Director of Fox5, Mr. Harmon, who is also an employee of FTS.  Decl. ¶ 6; Decl. Ex.  4.

FTS, in turn, makes its own employment decisions.  Decl. ¶ 18.  It does not require approval from either Parent Company to recruit, hire, retain, compensate, discipline or terminate its employees, especially not employees who work at local news stations such as Fox5.  *Id.*  FTS maintains robust antidiscrimination policies, similar to those of the Parent Companies, and assumes direct responsibility for implementing them.  Decl. ¶ 15.  In addition to keeping a separate human resources department, FTS also maintains its own office space, keeps separate accounting records and prepares its own budgets.  Decl. ¶¶ 18, 20–23, 25.  The personnel in the financial and human resources departments of FTS do not overlap with those in the corresponding departments of the Parent Companies.  Decl. ¶ 24.

**ARGUMENT**

**I.     The Claims Against Twenty-First Century And Fox Entertainment Should Be Dismissed Because The Parent Companies Are Not Plaintiff's Employers**

Plaintiff's employment claims have nothing to do with either Twenty-First Century or Fox Entertainment, neither of which employs her.  Instead, the substantive allegations in the Amended Complaint concern only Fox5, and Fox5's Vice-President, News Director, Mr. Harmon.  Such allegations cannot be imputed to the Parent Companies because FTS is not an integrated enterprise with either of them.  Plaintiff alleges no facts to demonstrate that either of the Parent Companies had any direct interaction with Plaintiff, hired Plaintiff, supervised Plaintiff or had any knowledge of how she was treated at Fox5.

Instead, the Amended Complaint assumes, without alleging any factual basis, that there was a "top-down harassment [that] permeated the corporate culture" across all corporate defendants, that the Parent Companies' executives "controlled the affairs of Fox with the intent that its corporate brand is viewed as a single business," and draws the bare legal conclusion that each of the defendants "has met the definition of an 'employer' of Plaintiff under all applicable statutes."  Am. Compl. ¶¶ 7, 46–48, 166.  Plaintiff has also resorted to labeling all distinct Fox holding companies, affiliates, and subsidiaries "collectively…as 'Fox'" on the purported and entirely speculative basis that "the various corporate entities operated as a single business enterprise for purposes of disseminating the Fox 'brand' and Fox 'programming message'" *Id.* ¶ 48 n. 8.  Yet none of the governing cases identifies "corporate culture" or "corporate brand" as a proxy for any of the enumerated factors that courts may consider in determining employer liability.  These bare allegations do not come close to satisfying Plaintiff's burden to allege facts sufficient to state her claims against corporations that are not Plaintiff's employer.  *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 256 (2d Cir. 2014) (affirming dismissal of complaint

because "broad generalizations drawn from job titles, classifications, or divisions, and

conclusory assertions of sex discrimination, cannot suffice.")

The Second Circuit has long recognized the general principle that a parent corporation is

a separate entity from its subsidiary and cannot be liable for the employment decisions of its

subsidiary. *Cook*, 69 F.3d at 1240. "[A] parent and subsidiary cannot be found to represent a

single, integrated enterprise in the absence of evidence of (1) interrelation of operations, (2)

centralized control of labor relations, (3) common management, and (4) common ownership or

financial control." *Id.* The "single employer doctrine," as set forth above, applies not only to

Title VII claims, like those in *Cook*, but also to claims brought under Section 1981 as well as the

NYSHRL and NYCHRL. *Ayala v. Metro One Sec. Sys., Inc.*, No. 11-CV-233, 2011 WL

1486559, at *5 (E.D.N.Y. Apr. 19, 2011).

### A. Plaintiff Is Employed By FTS, Not By The Parent Companies

The Amended Complaint acknowledges that Plaintiff is employed by Fox5, Am. Compl.

¶ 29, a local station owned and operated by FTS. Decl. ¶ 7. According to Plaintiff's W-2 forms

and pay stubs, FTS was her sole employer at all relevant times. Decl. ¶ 4; Decl. Exs. 2 and 3.

*Compare Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 341 (2d Cir. 2000) (finding that,

where Plaintiff produced pay stubs that showed his earnings as being "paid on behalf of

Columbia Pictures Industries" through "[Sony Pictures] Corporate Services, Inc.," a reasonable

jury "could conclude that [Columbia] exercised sufficient control over the terms and conditions

of [plaintiff's] employment to qualify as his 'employer' for purposes of a discrimination claim").

The only named individual defendant, Byron Harmon, is an employee of FTS, and his

employment contract is with that entity alone. Decl. ¶ 6; Decl. Ex. 4.

As a union member, Plaintiff's employment is governed by a collective bargaining agreement, signed only by her union and FTS.  Decl. Ex. 1.  While no one factor of the *Cook* test is dispositive, *Richard v. Bell Atl. Corp.*, 946 F. Supp. 54, 62 (D.D.C. 1996) (citing *Cook* and other Circuit cases), this Court has recognized that when plaintiff's employment is "exclusively governed by a union agreement between a union and the [immediate employer]," that factor should carry considerably more weight in evaluating whether corporate affiliates meet the "single employer" test.  *Suares v. Cityscape Tours, Inc.*, No. 11 Civ. 5650, 2014 WL 969661, at *6 (S.D.N.Y. Mar. 12, 2014), *aff'd*, 603 F. App'x 16 (2d Cir. 2015).  In *Suares*, the existence of a union agreement governing the terms and conditions of the plaintiff tour guide's employment was a key factor in determining that the affiliated corporate defendants were not a "single employer," notwithstanding their interrelation of operations.  *Id.*

### B. The Fox Television Stations Make Their Own Employment Decisions And Control Their Own Labor Relations

In assessing whether the single employer doctrine applies, the Second Circuit has held that the second factor—centralized control of labor relations—is most important to the inquiry. *Cook*, 69 F.3d at 1241.  The Parent Companies cannot be liable unless Plaintiff can show that they exerted "an amount of participation [that wa]s sufficient and necessary to the total employment process, even absent total control or ultimate authority over hiring decisions."  *Id.* This factor looks to "who controlled the central aspects of [the *plaintiff's*] employment." *Guzman v. News Corp.*, No. 09 Civ. 09323 LGS, 2013 WL 5807058, at *10 (S.D.N.Y. Oct. 28, 2013).  Here, FTS, not the Parent Companies, controlled the recruiting, hiring, retaining, compensating, disciplining and terminating of FTS employees without the need for specific approval from the Parent Companies.  Decl. ¶ 18.

In *Guzman*, for example, the plaintiff sued the New York Post, a subsidiary, and News Corp, its parent, for harassment and discrimination claims. *Id.* at *1. The court found there were no centralized labor relations when "[t]he Post, and not News Corp., was responsible for [plaintiff's] hiring, firing, supervision and evaluation," despite the fact that she was hired by a senior executive of the Post who was also the COO at News Corp. *Id.* at *10. The senior executive's dual responsibilities in both entities, "without more, does not show that he was acting on behalf of News Corp. when he hired Ms. Guzman." *Id. See also Herman v. Blockbuster Entm't Grp*, 18 F. Supp. 2d 304, 311 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 899 (2d Cir. 1999) (holding that Blockbuster, which partially owned plaintiff's actual employer, Discovery Zone, was not liable when Discovery Zone "had its own human resources department" and the "director of Discovery Zone's human resources department [was] in charge of the day to day decisions on Discovery Zone personnel.")

The second factor weighs decisively against finding a single employer relationship here. Because of the collective bargaining agreement between Plaintiff's union and FTS, Plaintiff does not participate in the same plans as FTS's non-union employees, or the employees of the Parent Companies. Decl. ¶ 3; Decl. Ex. 1. *See Herman*, 18 F. Supp. 2d at 311 (noting that "there is no evidence that Discovery Zone employees participated in the same benefit or pension plans as Blockbuster employees…"). Fox5's human resources department is also in charge of day to day decisions regarding newsroom personnel, with direct oversight by the human resources department at FTS, not the Parent Companies. Decl. ¶¶ 10, 12, 18.

Plaintiff has not alleged any facts suggesting that Mr. Harmon's alleged discrimination against her could be imputed to the Parent Companies. Instead, the Amended Complaint speculates that the Parent Companies' executives "design and issue corporate policies and

protocols that are then passed down to corporate subsidiaries and affiliates, including [Fox5]," that "these same executives select the individuals who will run the affiliate and subsidiary entities, including Fox5," and that *if* the Parent Companies' "male executives…also openly engaged in [discriminatory] conduct…[s]uch conduct inevitably would influence Harmon's understanding of what behavior towards women in the workplace was tolerated." Am. Compl. ¶¶ 12, 93. Though similar, FTS's antidiscrimination policies are distinct from those of the Parent Companies and are intended for different entities' employees. Decl. ¶ 15. That the Parent Companies may give guidance to FTS regarding overall policies is not evidence that they "significantly controlled the labor relations between [FTS] and its employees." *Zoldak v. Tacala, Inc.*, No. Civ. A. 398 CV 1565 (CFD), 2000 WL 1576419, at *4 (D. Conn. Sept. 27, 2000) (holding that Taco Bell did not control franchisee defendant's labor relations, despite the fact that Taco Bell gave an "Answer Book" to all of its franchisees containing "information concerning Taco Bell labor policies and procedures"). *See also Snyder v. Advest, Inc.*, No. 06 CIV. 1426 RMB, 2008 WL 4571502, at *7 (S.D.N.Y. June 8, 2008) ("Although AXA Financial may have provided Advest employees with certain of its corporate policies, '[t]he mere fact that [Plaintiff] agreed to be bound by certain standards of conduct set forth by [AXA Financial] does not indicate that [AXA Financial] exercised control over or made final decisions regarding the employment of [Plaintiff]'") (citing *Ennis v. TYCO Int'l. Ltd.*, No. 02 Civ. 9070, 2004 WL 548796, at *4 (S.D.N.Y. Mar. 18, 2004)).

Finally, Plaintiff does not (and cannot) allege that she worked for the Parent Companies and she does not assert that she complained of the allegedly discriminatory treatment to anyone

at FTS (or to her union), much less to anyone at the Parent Companies.[5]  *Compare Mas Marques v. Digital Equip. Corp*, 637 F.2d 24, 27 n.5 (1st Cir. 1980) (holding parent not liable for alleged discrimination claim against subsidiary even though the parent investigated plaintiff's complaint and cooperated with EEOC).  In sum, the Parent Companies are not alleged to have had any input into Plaintiff's day to day employment at Fox5 and cannot be deemed to have been her employers.

### C.    FTS's Operations Are Separate And Distinct From The Operations Of The Parent Companies

Plaintiff has also failed to allege any facts to suggest that the first factor of the single employer test could be met here—namely, that the operations of FTS were interrelated with those of the Parent Companies.  In determining whether operations are interrelated, courts look to a variety of factors, including whether the different entities have separate office spaces, whether the entities maintain "separate bank accounts and separate payroll accounts," and whether they independently prepare their "own financial statements, budgets and forecasts." *See, e.g., Herman*, 18 F. Supp. 2d at 309, 310 (citing these factors as evidence of insufficient interrelation of operations); *Balut v. Loral Elec. Sys.*, 988 F. Supp. 339, 345-46 (S.D.N.Y. 1997) (finding no interrelation of operations based, in part, on lack of common office space and the fact that the parent engaged only in periodic review of the subsidiary's operations), *aff'd*, 166 F.3d 1199 (2d Cir. 1998).

Plaintiff alleges no nexus between FTS and the Parent Companies in her Amended Complaint, much less a sharing of infrastructure or operating practices between them.  In fact,

---

[5]    And despite her attempt to drag alleged sexual misconduct by Ailes into the Amended Complaint, she has not asserted (and at this late date, cannot assert) a claim against the Parent Companies based on any interaction she may have had with him.  Prior to his departure, Ailes was not employed by either of the Parent Companies.

Plaintiff concedes that the Parent Companies operate out of different office spaces in a building on Sixth Avenue, but speculates that "[r]easonably, Harmon interacted with 'Sixth Avenue' on a regular basis."  Am. Compl. ¶ 163.  This speculation is not "reasonable"; Fox5 is not even located on "Sixth Avenue."  Decl. ¶ 21.  And *Balut* makes this speculation irrelevant: even regular contact by a subsidiary's managers with the parent entity "does not demonstrate an interrelationship, because a parent typically reviews a subsidiary's progress on a periodic basis." *Balut*, 988 F. Supp. at 345.  Separate corporate entities do not collapse into one whenever an employee from the subsidiary interacts with employees from the parent.  FTS maintains separate office space, financial records, departments and management personnel from the Parent Companies.  Decl. ¶¶ 20-25.[6]  There is no allegation of shared operations, as would be required to hold the Parent Companies liable for FTS's actions.

### D.    FTS's Management Is Separate And Distinct From Management Of The Parent Companies

Plaintiff does not allege that either of the Parent Companies ran FTS in a "direct, hands-on fashion, establishing the operating practices and management practices of [FTS or Fox5]." *Cook*, 69 F.3d at 1241.  Instead of alleging overlapping management personnel, the Amended Complaint points to the irrelevant fact that certain executives at Fox News, *i.e.* Dianne Brandi (Executive Vice President of Business and Legal Affairs of Fox News), and Denise Collins

---

[6]     Furthermore, within FTS, the local stations, such as Fox5, file as independent entities for licensing applications and renewals to the Federal Communications Commission. Decl. ¶ 13.  The local stations bid on government contracts as independent entities without the involvement of either of the Parent Companies. *Compare Balut*, 988 F. Supp. at 346 (finding no interrelation of operations when parent only reviewed bids above ten million dollars and when subsidiary "procured its own contracts").

(human resources employee at Fox News) still hold their same positions at Fox News today.[7]
Am. Compl. ¶¶ 13, 164.  Plaintiff also alleges that "[u]pon information and belief, Harmon was
hand-picked by Jack Abernathy [*sic*] to work at Fox5."  *Id.* ¶ 28.  Even if this allegation were
true, Jack Abernethy is the CEO of FTS, not either of the Parent Companies.

Plaintiff does not allege—nor can she allege—that the Parent Companies' executives
managed the operations and personnel decisions of FTS.  Decl. ¶¶ 10, 12, 14, 18, 22-24.
Management of FTS controls the hiring, disciplining, and terminating of FTS employees.  Decl.
¶¶ 18–19.  Management of FTS also sets the budgets, including expenses and compensation
schemes of the individual television stations, subject only to periodic review by the financial
department and management of the Parent Companies.  Decl. ¶ 27.  The review of FTS financial
and management decisions is not directly conducted by any of the executives at the Parent
Companies, but by executives at FTS in consultation with each other.  Decl. ¶ 26.  Any ordinary
oversight exerted by a parent over a subsidiary would not be enough to hold the former liable for
employment claims involving the latter.  *Balut*, 988 F. Supp. at 347 ("the fact that Balut and
others presented biannual reviews to Loral and discussed some issues on a weekly basis does not
show 'common management.'  This is no more than what a parent typically requires of a
subsidiary.")

### E.    Generalized Allegations About "Corporate Culture" Are Irrelevant To The Governing Legal Standard

The Amended Complaint tries to make out a relationship between the Parent Companies
and their affiliates by speculating there may be a "corporate culture…where male executives

---

[7]    The Amended Complaint also identifies Mark Kranz, who is the *former* CFO of Fox
News.  *Id.* ¶ 164.

were emboldened to treat female employees as second-class citizens," and that there were
"[f]acts about Ailes, O'Reilly, and Fox's key executives" relating to gender discrimination that,
"*if true*, would support [Plaintiff's] belief that speaking out about gender discrimination…would
likely result in her termination."  Am. Compl. ¶¶ 7, 94 (emphasis added).  It goes on to allege
that "evidence will be uncovered that shows Fox corporate executives managed and controlled
the affairs of Fox with the intent that its corporate brand is viewed as a single business…" and
that "if Fox created Fox Television [Stations] to take advantage of favorable tax positions, or
corporate regulatory and banking laws, such status fails to distance Fox from the conduct of
Harmon."  *Id.* ¶ 166.

        Such allegations cannot survive a motion to dismiss.  "[A]t a bare minimum," Plaintiff
must provide "factual allegations sufficient to raise a right to relief above the speculative level."
*Kearney v. Kessler Family LLC*, No. 11 Civ. 06016, 2011 WL 2693892, at *2, *5 (W.D.N.Y.
July 11, 2011) (holding that Plaintiff failed to allege facts that would support single employer
liability when "she d[id] not allege any interrelation of operations, centralized control of labor
relations, common management, or common ownership or financial support").  *See Andino v.
Fischer*, 698 F. Supp. 2d 362, 376 (S.D.N.Y. 2010) (adopting magistrate judge's
recommendation that ADA claims be dismissed because "[t]o survive [Rule 12(b)(6)] dismissal,
the plaintiff must provide the grounds upon which his claim rests through factual allegations
sufficient 'to raise a right to relief above the speculative level.'") (citing *ATSI Commc'ns, Inc. v.
Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007)).  Plaintiff's conjecture that discovery may
"uncover" tax or regulatory-motivated reasons for the creation of FTS, is not pertinent to the
"single employer" analysis.  Am. Compl. ¶ 166.  Nor is the question of whether a supposed

corporate "culture" might have (apparently by osmosis) influenced the behavior of an individual at a remote, both physically and legally, subsidiary.  *Id.* ¶¶ 93–94.

Furthermore, Plaintiff's allegations about the Parent Companies' "misogynistic culture" have no basis in reality.  *Id.* ¶ 1.  Women occupy the highest ranks at other Twenty-First Century subsidiaries:  Dana Walden is the Chairman and CEO of Fox Television Group and Stacey Snider is the Chairman and CEO of 20th Century Fox Film.[8]  Because Plaintiff does not and cannot allege any facts that, under the legal standard set by *Cook*, could establish that the Parent Companies are her employer, all of her claims against Twenty-First Century and Fox Entertainment should be dismissed with prejudice.

## II.    The Allegations About Ailes and O'Reilly Should Be Stricken

Plaintiff's allegations about Ailes and O'Reilly bear no connection to her claims. Plaintiff does not allege that she has ever met O'Reilly.  She alleges that she met Ailes at a restaurant in February 2011, and that he interviewed her in May of that year for a potential job with Fox News.  She alleges that Ailes made inappropriate, sexually harassing comments to her during the May 2011 interview, that he later asked State Senator Greg Ball, whom Plaintiff had once dated, whether she "put out" sexually, and that when Ball told Ailes that she was a "very nice girl," implying that she would not "put out," Ailes declined to hire her for Fox News and suggested she reach out to Fox's local stations instead.  Am. Compl.  ¶¶ 60–64.  Plaintiff asserts that she believed at the time that she did not get the job at Fox News because of Ailes' discovery that she would be unwilling to submit to him sexually.  *Id.*  ¶¶ 65–68.

---

[8]      *See* Twenty-First Century, *21st Century Fox Executives*, available at
https://www.21cf.com/management/executive-team.

Plaintiff does not and cannot assert any claims based on Ailes's behavior, because it is time-barred.  Instead, she seeks to tarnish the Defendants by asserting inflammatory allegations about Ailes and O'Reilly that have nothing to do with her claims.  Am. Compl. ¶¶ 1–22, 28, 32, 50–68, 93–94, and 161–65 (the "Ailes and O'Reilly Allegations").  Plaintiff alleges that there was a "misogynistic culture" at Twenty-First Century under Ailes, that multiple female employees came forward with allegations of sexual misconduct by Ailes and O'Reilly, and that, "[u]pon information and belief, Ailes knew of O'Reilly's unlawful conduct but failed to discipline O'Reilly, as Ailes was busy engaging in the exact same behavior." *Id.* ¶¶ 1, 2, 14–18.  She then speculates that the "top-down harassment began with Ailes and permeated the corporate culture." *Id.* ¶ 7.  Plaintiff claims that the "top-down policies and messaging" reached Fox5 and Mr. Harmon, *id.* ¶ 27, even though she herself does not allege that she was sexually harassed by Mr. Harmon or anybody else at Fox5, or even that she witnessed any sexual harassment of other women at Fox5.

All of the Ailes and O'Reilly Allegations should be stricken because "(1) [there is] no evidence in support of the allegations [that] would be admissible; (2) [] the allegations have no bearing on the relevant issues in the case; and (3) [] to permit the allegations to stand would result in prejudice to the movant." *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001).

## A. The Ailes And O'Reilly Allegations Are Irrelevant And Prejudicial

Even if the Ailes and O'Reilly Allegations were all true, they are completely irrelevant to Plaintiff's employment at FTS and could only inflame passions and unfairly prejudice Defendants.  Plaintiff's pejorative mischaracterization of the "misogynistic culture" at Fox News, and her reliance upon the women at Fox News who came forward to complain about Ailes

and the alleged settlements involving O'Reilly, have no bearing on her employment at a separate

and distinct entity, FTS, with separate and distinct management from Fox News.  Nor does

Plaintiff herself allege any nexus between the two save the conclusory allegations that "[f]acts

about Ailes, O'Reilly and Fox's key executives directly relate to [her] claims about whether the

corporate culture at Fox endorsed male supervisors who fostered an environment that was openly

hostile to women…" or that Ailes's or O'Reilly's conduct somehow "reverberat[ed] its way

through the corporate chain."  Am. Compl. ¶¶ 94, 161.  She does not allege that Ailes or

O'Reilly had any control over her or Mr. Harmon's day to day employment at Fox5, nor does

she allege that either Ailes or O'Reilly took any specific action with respect to her employment

at Fox5.  Indeed, her Complaint reflects that Ailes had resigned before some of the allegedly

discriminatory actions even took place.[9]  Am. Compl. ¶ 3.  Plaintiff's only interactions with

Ailes are said to have occurred almost six years ago, when he allegedly declined to hire her for

Fox News Channel, the national cable news network and she alleges no interaction whatsoever

with O'Reilly.  The Ailes and O'Reilly Allegations have no connection to Plaintiff's claims that

she was discriminated against on the basis of her age, race, ethnicity, national origin, gender, and

pregnancy as a part-time reporter working for the local Fox5 television station, particularly since

she has not alleged that she was ever sexually harassed there.

Allegations that "have no real bearing on the case, will likely prejudice the movant, or …

have criminal overtones" should be stricken from the case.  *G-I Holdings, Inc. v. Baron &
Budd,* 238 F. Supp. 2d 521, 556 (S.D.N.Y. 2002) (granting motion to strike certain allegations

---

[9]     Since the Amended Complaint has been filed, O'Reilly was fired by Fox News Network.
Emily Steel, *Bill O'Reilly Is Forced Out at Fox News*, NEW YORK TIMES, April 19, 2017,
available at https://www.nytimes.com/2017/04/19/business/media/bill-oreilly-fox-news-
allegations.html?_r=0.

because they are "amorphous, unspecific and cannot be defended against" and "harm [the

defendant] in the public eye and could influence prospective jury members") (citations omitted).

In fact, even where, unlike here, an allegation is "relevant to the controversy, it nonetheless may

be stricken if it is scandalous or set out in 'needless detail.'" *Tucker v. Am. Int'l Grp., Inc.*, 936

F. Supp. 2d 1, 16 (D. Conn. 2013) (citing *Cabble v. Rollieson*, No. 04 Civ. 9413, 2006 WL

464078, at *11 (S.D.N.Y. Feb. 27, 2006) (striking certain references to other litigation in the

complaint based on lack relevance to the action at hand); *cf. Urashka v. Griffin Hosp.*, 841 F.

Supp. 468, 476–77 (D. Conn. 1994) (dismissing plaintiff's complaint but noting that "if the court

were to reach the merits of the defendants' motion to strike" allegations regarding assistant

director's derogatory sexual references to the penis of male employee and 'little tush' of female

volunteer, when the action was based on age discrimination against plaintiff, "that motion would

be granted").

It is clear that the Ailes and O'Reilly Allegations are designed to "inflame the reader."

*Morse v. Weingarten,* 777 F. Supp. 312, 319 (S.D.N.Y. 1991) (striking references that were

"immaterial and impertinent to this case"). In fact, the O'Reilly allegations, which were added in

the Amended Complaint, only highlight Plaintiff's attempts to exploit complaints by other

women who *worked with Ailes or O'Reilly* to her own ends. Their allegations, true or false, have

no bearing on Plaintiff, who did not work with either Ailes or O'Reilly or even the other women.

Yet Plaintiff rehashes the other women's stories, Am. Compl. ¶¶ 2–8, 15–22, presumably

because she wants to take advantage of the front-page media frenzy spawned by the departures

of Ailes and O'Reilly from Fox News. After Plaintiff filed her original complaint, the New York

Times published a front-page story about women who had settled sexual harassment claims

against O'Reilly. *Id.* ¶ 15. She is clearly trying to ride on the coattails of Ailes's and O'Reilly's

notoriety to unduly prejudice FTS and the Parent Companies in the eyes of the public and potential jurors.

Indeed, since the lawsuit's filing, Plaintiff's counsel has already started talking to the New York Times, comparing her allegations to "the conduct of many of Fox's male managers reported by countless women over the past six months," and claiming that they "intend on holding Fox accountable for this conduct, and sending a message to employers everywhere that there are severe consequences to discriminating against female employees."  Emily Steel, *Fox Faces New Lawsuit Claiming Harassment by Roger Ailes*, NEW YORK TIMES, Dec. 13, 2016, available at https://www.nytimes.com/2016/12/13/business/fox-faces-new-lawsuit-claiming-harassment-by-roger-ailes.html.  This tactic appears to be standard operating procedure for Plaintiff's counsel, who has had scandalous, prejudicial and irrelevant allegations struck where, as here, they were inserted gratuitously to prejudice defendants.  *See, e.g.*, *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 511–12 (S.D.N.Y. 2013) (striking allegations about company's alleged mistreatment of customers in dispute brought by former employee over compensation, where the plaintiff was represented by Douglas Wigdor, counsel of record in this case).  Here too, Plaintiff's allegations regarding Ailes and O'Reilly should be stricken on the grounds that they are irrelevant and prejudicial to the Defendants.

### B.    The Ailes Allegations Are Time-Barred

The Ailes allegations should be stricken for the additional reason that they are time-barred.  Plaintiff implicitly concedes as much, since she does not bring a claim against Ailes or Fox News in her suit.  Time-barred allegations are inherently irrelevant and can be stricken.  *See Finnane v. Pentel of Am., Ltd.*, 43 F. Supp. 2d 891, 898 (N.D. Ill. 1999) ("The time-barred incidents cannot form the basis of a claim and thus are properly stricken from the complaint.").

For employment discrimination claims, the three-year statute of limitations begins to run when the employee has "reason to suspect" the adverse action was discriminatory. *Singh v. Wells*, 445 F. App'x 373, 377 (2d Cir. 2011). The claim is "not tolled or delayed pending the employee's realization that the conduct was discriminatory unless [he] was actively misled by his employer, or if one of the equitable tolling doctrines, [deception, fraud, misrepresentation by the employer], applies." *Id.*

Whatever Ailes said during Plaintiff's interview or his purported conversation with Senator Ball, Plaintiff was well aware of it in 2011. Certainly she knew what was said at her interview; Plaintiff also alleges she was "aware that [Ailes] had asked Senator Ball about her sexual proclivities" when Ailes told her shortly thereafter that she was "not ready" for a position at Fox News Company. Am. Compl. ¶¶ 66–67, *see also id* ¶ 65 ("*Based on the temporal proximity* between her private interview with Ailes, the call from Ailes to Senator Ball and Ailes' subsequent decision to not hire her, *it was clear to Ms. Curanaj* that she was 'not ready' for FNC because of Ailes [*sic*] discovery that she would be unwilling to submit to him, sexually.") Plaintiff therefore had "reason to suspect"[10] that the adverse employment action allegedly taken by Ailes may have been discriminatory when she was not hired by Fox News. *Singh*, 445 F. App'x at 377. Because the Ailes and O'Reilly allegations are irrelevant to Plaintiff's claims,

---

[10]    Indeed, the period may begin to run as soon as the plaintiff has notice of the adverse action, not when she has reason to suspect it was caused by discrimination. *See Cetina v. Longworth*, 583 F. App'x 1, 3 (2d Cir. 2014) ("this Court has held that the limitations period begins to run when the plaintiff receives notice of the adverse action. Because Cetina received notice of this promotion…in February 2010—the official announcement does not control the start of the [statute of limitations] period."), *cert. denied*, 135 S. Ct. 1531 (2015); s*ee also Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999) (holding that failure to promote claim accrued when the plaintiff "knew or should have known that he had been passed over for promotion").

prejudicial and time barred, this Court should strike paragraphs 1–22, 28, 32, 50–68, 93–94, and 161–65 of the Amended Complaint with prejudice.

## CONCLUSION

For the reasons set forth above, and in the accompanying declaration of Jean Fuentes, all Counts of the Amended Complaint should be dismissed with prejudice as to Defendants Twenty-First Century and Fox Entertainment pursuant to Fed. R. Civ. P. 12(b)(6), and paragraphs 1–22, 28, 32, 50–68, 93–94, and 161–65 of the Amended Complaint should be stricken pursuant to Fed. R. Civ. P. 12(f).

Dated:     New York, New York
           May 15, 2017

                              Respectfully submitted,

                              DECHERT LLP

                              By:  _Linda C. Goldstein_
                                   Andrew J. Levander
                                   Linda C. Goldstein
                                   Nicolle L. Jacoby
                                   Diana C. Wang

                              1095 Avenue of the Americas
                              New York, New York 10036
                              Telephone: (212) 698-3817
                              Fax: (212) 698-0684
                              linda.goldstein@dechert.com

                              *Attorneys for Defendants Twenty-First*
                              *Century Fox, Inc., Fox Entertainment*
                              *Group LLC, Fox Television Stations, LLC*
                              *and Byron Harmon*

- 23 -